Filed 10/17/25  In re S.F. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FIVE

| | |
|---|---|
| In re S.F., a Person Coming Under the Juvenile Court Law. | B344123 c/w B344126 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20LJJP00581A) |
| Plaintiff and Respondent, | |
| v. | |
| M.F., | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Temporary Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals from orders denying her petition under Welfare and Institutions Code section 388[1] and terminating parental rights over her fourth child (minor) pursuant to section 366.26.[2] Mother contends it was error to find inapplicable the parental relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(B)(i). Mother does not make any legal argument for why the juvenile court erred in summarily denying her petition to change a prior court order under section 388. The Los Angeles County Department of Children and Family Services (Department) contends the court did not err in finding an insufficiently substantial bond between mother and minor to support a finding that any detriment associated with breaking that bond was outweighed by the benefit of permanency. The Department further contends that mother has forfeited any contention of error as to the court's section 388 order by failing to raise any argument on appeal. We agree with the Department, and therefore affirm the summary denial of mother's section 388 petition on January 31, 2025 and

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Minor's father is not a party to the current appeal. Mother filed two separate notices of appeal. Her appeal from the termination of parental rights under section 366.26 is case number B344123, and her appeal from the order denying mother's section 388 motion is case number B344126. On May 29, 2025, this court granted mother's motion to consolidate the two cases, ordering that documents in case B3244126 would be re-filed into lead case B344123 and all future filings would be made in the lead case.

the termination of parental rights as to minor on February 10, 2025.

## BACKGROUND

As a child, mother was involved in the foster care system. She has four older children, born between 2007 and 2016, who are half-siblings of minor; the oldest is over the age of 18, and mother's parental rights have been terminated as to the other three. It is not necessary to provide extensive detail about the earlier dependency proceedings involving minor's half siblings. We note, however, that mother was convicted of cruelty to a child in July 2014, and in November 2014, a juvenile court sustained allegations that mother physically abused a child, resulting in facial swelling and lacerations to the child's nose, shoulder, back, and buttocks, resulting in the child's hospitalization, and mother pulled braided hair from the child's scalp. In addition, in September 2020, when the halfsibling closest in age to minor was three years old, the dependency court sustained section 342 petition allegations that mother physically and emotionally abused the child.[3]

Minor was born in July 2020, and a Department social worker interviewed mother at the hospital on August 1, 2020, in part because mother had previously denied being pregnant even when asked directly, and there had been a domestic violence incident at the home in March 2020 resulting in father's arrest, raising concerns about minor's safety. In early September 2020,

---

[3] A petition filed under section 342 involves new or amended allegations raised in an ongoing dependency proceeding.

the Department obtained a removal order for minor, based on domestic violence between mother and father, allegations that ultimately formed the basis for exercising dependency jurisdiction over minor. The court denied reunification services for mother under section 361.5, subdivisions (b)(10), (b)(11), and (b)(12), based on the earlier dependency proceedings involving mother's older children.[4] It also granted mother monitored visitation for nine hours a week.

After a brief placement with Mrs. H for a little over a week when minor was one-month-old, minor lived in the home of Mr. and Mrs. T (the Ts) from September 2020 through February 2024. The Ts notified the Department in March 2022 that they would not be adopting minor because they had decided to adopt another child and could not provide permanency to two children. In addition, the Ts had problems with minor having tantrums and showing aggression towards other children in the home. The Department investigated possible relative placements with a

_____

[4] The subdivisions the court relied on permit a juvenile court to bypass reunification services when "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to [s]ection 361 and that parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian," (§ 361.5, subd. (b)(10)(A)) "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed," (§ 361.5, subd. (b)(11)(A)) and "the parent or guardian of the child has been convicted of a violent felony." (§ 361.5, subd. (b)(12))

paternal aunt and maternal grandmother, but ultimately in February 2024, minor was placed with Mrs. M, a foster mother who was willing to provide permanency. Minor's tantrum behaviors initially escalated, and Mrs. M sought additional supportive services in March 2024, but when services were delayed in late June and early July, Mrs. M reported she no longer wanted services.

Throughout most of minor's life, mother has maintained consistent weekly visitation for around three to four hours. On several occasions, mother asked for additional visitation, and the court ordered the Department to provide mother with three weekly three-hour visits, but the frequency and length of visits did not appear to change much. Mother consistently arrived on time and prepared for visits, and was observed to interact appropriately with minor, often spending time braiding his hair, an interaction that mother described as part of her culture and as time when minor could relax and open up to her. Describing mother's visits in an August 2024 report, the Department noted that the visits "appear to be nurturing and positive," but that mother would only braid minor's hair, watch him play, and watch children's programming with him on a tablet. Mother did not bring educational or developmental books or toys. The Department also noted that since minor's initial detention in September 2020, mother had shown little to no interest in minor's development, doctor's appointments, or therapy. The Department was most concerned that mother continued to be in denial about the reasons why dependency jurisdiction had been asserted over her older children and the factual background behind her conviction and two-year incarceration for child cruelty.

Over the course of the dependency case, mother filed four different section 388 petitions seeking a change in court orders to either return minor to her custody or reinstate reunification services. She filed her first petition in August 2022, and the Department filed a response a few weeks later, raising concerns that mother was not being candid about her continued relationship with father. After an evidentiary hearing on November 10, 2022, at which mother testified, the court took the matter under submission. The court later denied mother's petition, noting that circumstances had not changed from disposition, when the court had ordered mother's reunification services bypassed. It explained that while mother had enrolled in programs, she did not appear to have learned from the programs, as she continued to deny any responsibility for the earlier allegations of neglect, abuse, and child cruelty.

Mother filed her second section 388 petition in March 2024, and a third petition in May 2024. The Department responded in August 2024, recommending that minor remain with Mrs. M. After hearing argument, the court denied both petitions, again finding that mother's participation in classes and counseling did not constitute a change in circumstances, and she had not shown that the requested relief would be in minor's best interest.

In December 2024, more than four years after minor was last in her custody, mother filed a fourth petition under section 388, once again seeking to change the court's November 2021 order bypassing reunification services, and asking the court to either place minor with mother or to order reunification services and permit unmonitored visits between mother and minor. Mother cited as changed circumstances that she continued to have regular visits with minor, and now that minor was older, he

was expressing how much he loved his mom and wanted to live with her.  In addition, mother's counselor, who had worked with her for years, could provide a professional assessment of the work mother had done.  Mother alleged that the requested relief was in minor's best interest because she had maintained consistent visitation and shown a pattern of regular and appropriate parenting during visits, and based on recent information she did not present a risk of harm to minor.  On January 31, 2025, the juvenile court denied mother's petition without an evidentiary hearing, again pointing out the severity of the prior allegations against mother involving her older children.  The court explained that minor's young age and the fact that he had been out of mother's custody for most of his life meant that mother's requested relief was not in minor's best interests.

At a permanency planning hearing on February 10, 2025, the court heard testimony and argument relating to the termination of parental rights under section 366.26.  Minor, who was then four years old, testified in chambers.  After asking some preliminary questions, the court determined that minor knew the difference between the truth and a lie, but his responses could be difficult to decipher.  Minor testified he knew who his mom was, he loved her, he played with her at the mall, and he liked doing that.  He also liked when his mother did his hair.  His mother taught him the alphabet, but not numbers or colors.  Mrs. M (who minor referred to as "Gigi") taught him colors.  When mother's counsel asked minor how he felt when he didn't get to see mother, minor conveyed that he was happy when he saw her, but his responses did not explain how he felt when he did not get to see her.  Minor's responses also conveyed that he did not have an accurate sense of how often he saw mother.  On cross-

7

examination, minor testified that Mrs. M drops him off at school and puts him to bed.

Mother testified she had four-hour weekly visits with minor for the past two years, and that minor was always excited to see her. Addressing the Department's reports that she does minor's hair during visits, she explained it was culturally important. When she did his hair, minor was comfortable and would open up, talking to her about his day, and he loved the way he looked afterwards. Mother described how she handled the situation if minor had a tantrum or a toileting accident, redirecting him and letting him know that he is loved. They both told each other all the time that they love each other. Mother testified minor did not like to leave her at the end of visits.

The Department argued that mother's evidence did not warrant application of the parental relationship exception under section 366.26, subdivision (c)(1)(B)(i). The court emphasized that minor had been out of mother's custody for almost all of his life, and that mother's history minimized any benefit associated with permitting the parent-child relationship to continue, especially considering minor's testimony that in his daily life, he relies on Mrs. M. Minor's counsel joined in the Department's argument that the parental relationship exception was not applicable here, arguing that while there was a positive attachment between mother and minor, the harm associated with ending that relationship could be addressed with services, given minor's level of comfort with Mrs. M, and so it would be in minor's best interests to terminate parental rights. Mother's counsel asked the court to not terminate parental rights, but instead to apply the parental relationship exception under *In re*

*Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*) based on the significant role mother played in minor's life.

The juvenile court took judicial notice of the case file and considered the Department's reports before finding that no exception to adoption applied to minor.  The court applied the *Caden C.* factors, finding mother had visited consistently, but that the benefit minor derived from the relationship was limited, and did not outweigh the benefit of adoption.

Mother timely appealed the court's January 31, 2025 order summarily denying her section 388 petition.  She also timely appealed the order terminating parental rights.

## DISCUSSION

### A.    Mother's Section 388 Petition

Mother does not make any legal argument for why the juvenile court erred when it summarily denied her section 388 petition seeking to have minor placed with her or to have unmonitored visits and reunification services reinstated.  "The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 79.)  A brief must contain reasoned argument and legal authority to support its contentions or the court may treat the claim as waived.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)  Given the lack of any argument in mother's brief regarding the denial of her section 388 petition, we affirm the order.

9

**B.      Parental Relationship Exception**

Mother contends the juvenile court improperly ignored the substantial positive bond that existed between mother and minor when it found inapplicable the parental relationship exception to termination of parental rights.  She argues that the parental bond was sufficiently strong to provide a benefit to minor, and that the trial court abused its discretion in deciding that the benefit of the parent-child bond was outweighed by the benefits of permanency.

### 1.      *Relevant Law and Standard of Review*

The express purpose of section 366.26 is "to provide stable, permanent homes" for dependent children.  (§ 366.26, subd. (b).)  If the juvenile court has decided to end reunification services, adoption is the legislative preference.  (§ 366.26, subd. (b)(1).)  " 'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' "  (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)  Guardianship is a less preferable option, because it " 'falls short of the secure and permanent future the Legislature had in mind for the dependent child.' "  (*Ibid.*)

Once it has been determined that a minor is adoptable, "the court must order adoption and its necessary consequence, termination of parental rights," unless a parent can demonstrate one of the exceptions set forth in section 366.26 applies.  (*In re Celine R.*, *supra*, 31 Cal.4th at p. 53; see § 366.26, subd. (c)(1); *Caden C.*, *supra*, 11 Cal.5th at p. 625.)  The specified circumstances in section 366.26, subdivision (c)(1)(B) are

10

"actually, *exceptions* to the general rule that the court must choose adoption where possible." (*In re Celine R.*, at p. 53.) They " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' [Citation.] At this stage of the dependency proceedings, 'it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home.' [Citation.] The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*Ibid.*; see *In re A.L.* (2022) 73 Cal.App.5th 1131, 1150.)

The exception mother relies on here is the parental relationship exception, which permits the selection of another permanent plan if the "parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The parent has the burden of establishing this exception. (*In re A.L.*, *supra*, 73 Cal.App.5th at p. 1153.) The exception requires a parent to establish, by a preponderance of the evidence: (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) The "language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's

11

relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Id.* at p. 630.) When the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*Id.* at pp. 633–634.) However, if " 'severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights. [Citation.]" (*Id.* at p. 633.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a parental relationship for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.) We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion. (*Id.* at p. 640.)

2. *Analysis*

The juvenile court found that mother met the first requirement of maintaining consistent visits with minor, and both, mother and the Department agree this ruling was correct. On the second factor under *Caden C.*, mother contends the trial court erred in finding that the relationship between mother and minor did not support a "substantial, positive, emotional attachment" such that minor would benefit from continuing the relationship with mother. (*Caden C., supra*, 11 Cal.5th at p. 636.) Mother argues the court improperly minimized the

12

connection minor shared with mother and that she had been the only constant in his life.  She further argues the court erred by focusing on the issues that led to the dependency and mother's inability to progress beyond monitored visits.  The *Caden C.* court explained that in determining whether a child has a positive emotional attachment, courts must consider that "the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' "  (*Id.* at p. 632; *In re M.V.* (2023) 87 Cal.App.5th 1155, 1183.)  The issues leading to dependency and a parent's continued struggles "are relevant only to the extent they inform the specific questions before the court:  would the child benefit from continuing the relationship and be harmed, on balance, by losing it?" (*Caden C., supra*, 11 Cal.5th at p. 638; *In re J.D.* (2021) 70 Cal.App.5th 833, 853.)

According to the juvenile court's minute order, the court found that mother had not established a bond with minor.  While the court agreed with the Department's position that mother had not shown a substantial beneficial relationship, it also acknowledged that minor knew who his mother was and enjoyed spending time with her.  The court concluded, however, that the benefit to minor from that relationship was limited, in part because mother continued to struggle with the issues leading to the dependency.  It also agreed with minor's counsel that with services in place, any detriment to minor could be overcome.  Even assuming for the sake of discussion that it was improper for the court to consider mother's earlier struggles in the dependency context in evaluating whether the relationship between mother

13

and minor was substantial and beneficial, the overall factual determination is multifaceted, ranging from "the specific features of the child's relationship with the parent and the harm that would come from losing those specific features to a higher-level conclusion of how harmful in total that loss would be.  The court must also determine, for the particular child, how a prospective adoptive placement may offset and even counterbalance those harms." (*Caden C., supra*, 11 Cal.5th at p. 640.)  Considering the record as a whole, we cannot say that the court's finding was unsupported by substantial evidence.

Finally, mother has not shown the court abused its discretion in finding that the benefits of adoption outweighed any detriment that minor might suffer from ending his relationship with mother.  As the court pointed out, then four-and-a-half-year-old minor had not lived with mother ever, and had lived with Mrs. M for a year.  The reports and minor's testimony demonstrated that his relationship with Mrs. M and the benefits of that relationship were strong, and that, with supportive services, the benefits of permanency through adoption would outweigh the benefit of preserving minor's relationship with mother.

## DISPOSITION

The juvenile court's January 31, 2025 order denying the mother's Welfare and Institutions Code section 388 petition and its February 10, 2025 order terminating parental rights under Welfare and Institutions Code section 366.26 are both affirmed.

NOT TO BE PUBLISHED.


MOOR, J.

I CONCUR:


KIM (D.), J.

In re S.F.
B344123


BAKER, Acting P. J., Concurring



      I agree the juvenile court's orders should be affirmed because there is no challenge to the juvenile court's Welfare and Institutions Code section 388 ruling and because the court did not abuse its discretion in concluding the harm from severing S.F.'s relationship with M.F. would not outweigh the benefit to the child of placement in a new adoptive home (*In re Caden C.* (2021) 11 Cal.5th 614, 632).



      BAKER, Acting P. J.